# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| RAFAEL CAJIGAS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> ALLIANCE COLLECTION AGENCIES INC., <br><br> Defendant. | Case No.: 19-cv-485 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k, and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Rafael Cajigas is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect arose from a consumer transaction with an agreement to defer payment.

6. Defendant Alliance Collection Agencies, Inc. ("ACA") is a domestic business corporation with its principal offices located at 3916 South Business Park Avenue, Marshfield, Wisconsin 54449.

7. ACA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. ACA is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. ACA is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. ACA is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about April 4, 2018, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this Complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, namely medical services.

13. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

14. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

15. Upon information and belief, Exhibit A is the first written communication Defendant mailed to Plaintiff regarding this alleged debt.

16. Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

17. Exhibit A also contains the following:

| SERVICE DATE | CREDITOR | ACCOUNT NUMBER | TOTAL BALANCE |
|---|---|---|---|
| 01/18/2017 | LAKESHORE MEDICAL CLINIC LAYTON | ****7477 | 5.95 |
| | | GRAND TOTAL | $5.95 |

Exhibit A.

18. Exhibit A states that Plaintiff has 30 days from receipt of Exhibit A to dispute an alleged debt in the amount of $5.95, which was owed to "Lakeshore Medical Clinic Layton," and associated with an account number ending in 7477 and a "Service Date" of January 18, 2017.

19. On or about April 10, 2018, Defendant mailed a second debt collection letter to Plaintiff. A copy of this letter is attached to this complaint as Exhibit B.

20. Upon information and belief, a portion of the alleged debt referenced in Exhibit B was the same debt referenced in Exhibit A.

21. Upon information and belief, Exhibit B is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

22. Upon information and belief, Exhibit B is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

23. Exhibit A is dated April 4, 2018, and Exhibit B is dated April 10, 2018.

24. Upon information and belief, Defendant mailed Exhibit B within about a week of Exhibit A.

25. Exhibit B contains the same statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

26. Exhibit B also states:

| SERVICE DATE | CREDITOR | ACCOUNT NUMBER | TOTAL BALANCE |
|---|---|---|---|
| 01/18/2017 | LAKESHORE MEDICAL CLINIC LAYTON | ****7477 | 5.95 |
| 01/31/2017 | AURORA ST LUKES SOUTH SHORE | ****4337 | 19.91 |
| | | GRAND TOTAL | $25.86 |

Exhibit B.

27. Looking at Exhibits A & B together, it is impossible to determine whether the validation period for the alleged debt with an account number ending in 7477 ends thirty days from the consumer's receipt of Exhibit A or the consumer's receipt of Exhibit B.

28. The representation that the consumer has thirty days from receipt of Exhibit B to dispute the debt with an account number ending in 7477 is confusing, misleading, and unfair.

29. In fact, the Seventh Circuit has explained that the validation period begins to run with the consumer's *initial* validation notice, and a consumer who does not dispute the debt during this initial thirty-day period foregoes the "ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 348 (7th Cir. 2018).

30. Communication during the validation period that "misrepresent[s] or cloud[s] the amount of time remaining to dispute the debt" is inconsistent with the disclosure of the consumer's right to dispute the debt. *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417-18 (7th Cir. 2005); *see,* 15 U.S.C. § 1692g(b); *see also, Jones v. Ameriquest Mortg. Co.*, No. 05-cv-432, 2006 U.S. Dist. LEXIS 3788, at *25 (N.D. Ill. Jan. 31, 2006) (finding consumers may detrimentally rely on defendant's one-week "rescission" notice because "[n]othing that Defendants provide to borrowers explicitly states or guarantees that Defendants provide or intend to provide all of the TILA rights and remedies for a borrower who uses the One-Week form to cancel during days four-through-seven after closing."), *aff'd by, Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007).

31. Numerous courts have found that mailing a second validation notice during the validation period impermissibly clouds and misrepresents the amount of time remaining to dispute the debt, and creates the risk that the consumer will unwittingly waive the power to require debt collectors cease collection:

> Even if Alliance would voluntarily honor the new 30-day validation period, that would not be apparent to a consumer upon receipt of the letter. In other words, even if the notice were factually true, it could still confuse the consumer.
>
> Furthermore, choosing to validate the debt does not absolve the debt collector of liability for misleading the consumer about her rights. *See McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 742-43 (N.D. Ill. July 8, 2003). There is a real risk that Alliance's second notice might mislead an unsophisticated consumer into

forfeiting her rights under the FDCPA. The unsophisticated consumer is likely not aware that she has a statutory right to dispute the debt within 30 days of the first notice, and that doing so will require the debt collector to cease collections activities while the verification is pending. When she receives the initial notice, she simply understands that if she wants to dispute the debt she has to do so within 30 days. When she receives the second notice, using identical language as the first to announce what is apparently a new validation period, she may reasonably assume that she has 30 days from that date to dispute the debt. Thus, a consumer who receives a second notice may reasonably wait until after the initial 30-day period to dispute the claim. In doing so, she unknowingly forfeits the statutory right to dispute the debt and trigger the ceasing of collections activities required by the statute.

*Maloney v. All. Collection Agencies, Inc.*, No. 17-cv-1610, 2018 U.S. Dist. LEXIS 189649, at *10-11 (E.D. Wis. Nov. 6, 2018); *see, Kafele v. Lerner, Sampson, & Rothfuss, L.P.A.*. No. 02-cv-743, 2005 U.S. Dist. LEXIS 11127, at *8-9 (S.D. Ohio June 9, 2005) (collecting cases and concluding that "inconsistent statements regarding the deadline to dispute a debt violate § 1692g."); *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 527 (E.D. Penn. 1996); *Seplak by Seplak v. IMBS, Inc.*, No. 98-cv-5973, 1999 U.S. Dist. LEXIS 2106, at *12-16 (N.D. Ill. Feb. 22, 1999); *Christopher v. R.J.M. Acquisitions LLC*, No. 13-cv-2274, 2015 U.S. Dist. LEXIS 12452, at *21-23 (D. Ariz. Feb. 3, 2015); *cf., Gammon v. Belzer*, No. 96-cv-5936, 1997 U.S. Dist. LEXIS 5170, at *12 n.3 (N.D. Ill. Apr. 9, 1997); *Trull v. GC Servs. Ltd. Pshp.*, 961 F. Supp. 1199, 1205 (N.D. Ill. 1997); *Delmoral v. Credit Prot. Ass'n, LP*, No. 13-cv-242, 2015 U.S. Dist. LEXIS 133760, at *16 (E.D.N.Y. Sept. 30, 2015); *Paige v. Waukesha Health Sys.*, No. 12-cv-601, 2013 U.S. Dist. LEXIS 96962, at *23-24 n.3 (E.D. Wis. July 11, 2013).

32. Further, upon receiving two validation notices in rapid succession, "it is possible that an unsophisticated consumer could feel threatened or harassed by multiple confusing letters from a debt collection agency, especially arriving in short succession as they did." *Maloney*,

2018 U.S. Dist. LEXIS 189649, at *17 (plaintiffs stated claim under the WCA where Alliance mailed confusing follow-up validation notices).

33. Plaintiff was confused by Exhibits A and B.

34. The unsophisticated consumer would be confused by Exhibits A and B.

### *The FDCPA*

35. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview*

*Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also, Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

36. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

37. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

38. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

39. 15 U.S.C. § 1692g provides that

(a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (2) the name of the creditor to whom the debt is owed[.]
>
> . . .
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt and request the name and address of the original creditor.

### *The WCA*

40. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

41. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

42. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

43. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

44. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

45. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

46. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

47. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

48. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

49. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

50. Wis. Stat. § 427.104(1)(m) states that a debt collector may not: "Engage in conduct in violation of a rule adopted by the administrator . . . ."

51. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. <u>Exhibits A & B</u> contain confusing and misleading representations as to when the validation period begins and ends.

54. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a), and 1692g(b).

## COUNT II – WCA

11

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Defendant is licensed as a collection agency.

57. Exhibits A & B contain confusing and misleading representations as to when the validation period begins and ends.

58. The unsophisticated consumer would feel threatened or harassed by the multiple confusing letters that arrived in short succession. *See, Maloney*, 2018 U.S. Dist. LEXIS 189649, at *17.

59. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

60. Plaintiff brings this action on behalf of a Class.

61. The Class consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters in the form represented by Exhibits A & B to the Complaint in this action, (c) where the letter in the form of Exhibit B was mailed within thirty days of the date when Exhibit A was mailed, (d) and the letter in the form of Exhibit B was mailed between April 3, 2018 and April 3, 2019, inclusive, (d) and neither letter was returned by the postal service.

62. Upon information and belief, the Class is so numerous that joinder is impracticable.

63. Upon information and belief, there are more than 50 members of the Class.

64. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

65. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

66. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

67. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

68. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 3, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com